IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABRAHAM SHAKERI, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:13-CV-2852-D |
| VS. | § | |
| | § | |
| ADT SECURITY SERVICES, INC. | § | |
| d/b/a ADT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from the failure of an alarm system during the armed robbery of a jewelry store, defendant Tyco Integrated Security LLC, f/k/a ADT Security Services, Inc. ("ADT")[1] moves under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' negligence claim, moves under Rule 9(b) to dismiss plaintiffs' claims for fraud and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and moves to limit plaintiffs' recoverable damages to the sum of $1,000. For the reasons set out below, the court grants in part and denies in part the motion to dismiss, declines to hold that plaintiffs' recoverable damages are limited to $1,000, and grants plaintiffs leave to replead.

---

[1]ADT Security Services, Inc. changed its name to Tyco Integrated Security LLC in June 2012. Because the name change occurred after the events giving rise to this litigation, the court will refer to the defendant as ADT.

I

Plaintiffs Abraham Shakeri ("Shakeri") and Kahatereh Taji ("Taji")[2] operate a jewelry store called Niemax Jewelry ("Niemax").[3] In 1988, shortly after Niemax opened, Shakeri executed a contract ("1988 Contract") with ADT pursuant to which ADT agreed to install, monitor, and maintain an alarm system at Niemax. The alarm system purchased for Niemax included constant monitoring by ADT and panic buttons for use in case of a robbery. In 1999 Shakeri, as President of Niemax, executed a second contract ("1999 Contract") with ADT when ADT updated and replaced some of the alarm system's existing components. Niemax paid ADT for the alarm installation and paid monthly for alarm service.

On January 5, 2012 Shakeri contacted ADT and requested a checkup of the Niemax alarm system. ADT sent out a technician on January 10, 2012. The technician informed Shakeri that repairs were complete, but, after the technician left, Shakeri noticed a new beeping sound coming from the alarm. He contacted ADT to report the problem. The following day, ADT sent a repair technician to Niemax, but because he arrived at 5:00 p.m. and ADT had not authorized overtime, he departed without inspecting Niemax's alarm.

On January 12, 2012 Niemax was robbed. During the robbery, Shakeri pushed the

---

[2]Plaintiffs' state-court petition refers to both "Kahatereh Taji" and "Mrs. Shakeri," whom the court assumes is the same person.

[3]In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiffs' state-court petition in the light most favorable to the plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

panic button on his alarm system multiple times, but the alarm did not respond. Shakeri was severely beaten and tasered. The ADT repair technician arrived at Neimax shortly after the robbery. According to the state-court petition, ADT admitted to Shakeri that, at the time of the robbery, the alarm system was broken and no monitoring was taking place.

Plaintiffs sued ADT in state court alleging claims for breach of contract, fraud, negligence, and violation of the DTPA. ADT removed the case to this court and now moves to dismiss plaintiffs' negligence, fraud, and DTPA claims, and to limit their contract damages to $1,000. Plaintiffs oppose the motion.

II

The court begins by considering ADT's motion to dismiss plaintiffs' negligence claim.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive ADT's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citation omitted).

B

Plaintiffs' negligence claim rests on the premise that ADT was "negligen[t] in misrepresenting that the alarm system would be an underwriters lab certified/approved commercial alarm for the jewelry store in a commercial setting." Pet. ¶ 9.[4] Plaintiffs allege that ADT "owe[d] a legal duty to the Plaintiffs to provide for a[n] operating top of the line commercial alarm for the Plaintiffs and their jewelry store[.]" *Id.* at ¶ 11.

ADT moves to dismiss plaintiffs' negligence claim, arguing that there is no common law duty to install, monitor, and repair an alarm system, and, to the extent ADT was contractually obligated to install, monitor, and repair Niemax's alarm system and breached

---

[4]This claim appears to be more in the nature of a negligent misrepresentation claim rather than a negligence claim. The court need not decide this question, however, because plaintiffs do not purport to assert such a claim.

this contractual obligation, plaintiffs' only remedy is to sue for breach of contract. In response, plaintiffs maintain that they did not individually sign either the 1988 Contract or the 1999 Contract—Shakeri signed both contracts as President or officer of Neimax—and thus they are not bound by the contracts. They cite *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011), and its progeny to argue that their negligence, fraud, and other statutory claims[5] fall outside the economic loss rule. They maintain that the economic loss rule does not apply to all tort claims when a contract exists, and they posit that the Supreme Court of Texas rejects the conclusion that the economic loss rule precludes a recovery of economic damages for a tort claim.

The flaw in plaintiffs' negligence claim is more fundamental than the question whether the economic loss rule applies: "there must be a violation of a duty imposed by law independent of the contract" with ADT. *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 2013 WL 4478187, at *4 (Tex. App. Aug. 20, 2013, pet. filed) (mem. op.) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Carson Energy, Inc. v. Riverway, Bank*, 100 S.W.3d 591, 601 (Tex. App. 2003, pet. denied)) (affirming summary

---

[5]Plaintiffs maintain that they have sued ADT for "[f]raud and fraud in the inducement," "[n]egligence and gross negligence," violation of the DTPA, and "[i]ntentional tort for the failure of [ADT] to act/Breach of Duty." Ps. Br. 5. It does not appear, however, that plaintiffs allege a claim for fraudulent inducement. "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract[.]" *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Plaintiffs do not plausibly plead that ADT fraudulently induced them to enter into the 1988 Contract or the 1999 Contract. In fact, they explicitly disavow that they are parties to either contract. Nor do they allege a claim for "failure of [ADT] to act/Breach of Duty."

judgment where plaintiffs did not allege violation of any duties imposed by law that were independent of the contract in question). But plaintiffs have not demonstrated that in Texas there is a common law duty to provide an operating top of the line commercial alarm. As the petition is now pleaded, if ADT had such an obligation, it arose by contract. Accordingly, because plaintiffs have not plausibly pleaded a "violation of a duty imposed by law independent of the contract," the court grants ADT's motion to dismiss their negligence claim. *See Chapman Custom Homes*, 2013 WL 4478187, at *4-5; *see also Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456, 458 (6th Cir. 2007) (affirming summary judgment on plaintiff's tort cause of action against alarm company alleging negligence in dispatching emergency personnel because "ADT's obligation to promptly and correctly dispatch EMS emanated only from the contract, not Michigan common law, and thus no tort claim is available."); *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F.Supp.2d 1061, 1072 (C.D. Cal. 2010) (holding as a matter of law that alarm company owed no independent tort duty to the plaintiffs and noting "[p]laintiffs have not pointed to, nor has this Court found, a single case in which a court held . . . that an alarm company's failure to notify the relevant parties of a received burglar alarm signal created a duty outside of the contract and therefore constituted gross negligence.").

III

Because the heightened pleading standards of Rule 9(b) apply to plaintiffs' claims for common law fraud and violation of the DTPA to the extent this claim is based on allegations

of fraud,[6] the court will consider these claims together.

A

ADT moves to dismiss plaintiffs' fraud and DTPA claims under Rule 9(b), contending that plaintiffs have alleged no facts identifying who made an alleged misrepresentation, how it was made, when it was made, to whom it was made, the exact content of the representation, and why the representation was fraudulent. Plaintiffs have not responded to ADT's argument.

B

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.*

---

[6]Plaintiffs' claim that ADT's "false, misleading, and deceptive" acts violated the DTPA is subject to the pleading requirements of Rule 9(b). *See, e.g., Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (stating that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *see also El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*, 1999 WL 354237, at *2 (N.D. Tex. 1999) (Fitzwater, J.) (holding that claims alleging violations of the DTPA are subject to Rule 9(b)'s requirements).

(quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citations omitted). Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (citations and internal quotation marks omitted). "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.).

C

Plaintiffs' fraud-based claims recite the elements of the causes of action,[7] but they fail

---

[7] "The elements of common law fraud in Texas are: . . . (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." *Choe v. Bank of Am.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law)). "The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury." *Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.) (citing *Amstdt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).

to provide any particulars of the alleged fraud. For example, in support of their fraud claim, plaintiffs include allegations such as: "Defendants made representations to the Plaintiffs that the alarm was a[n] Underwriters lab highest rated commercial alarm for the jewelry business," Pet. ¶ 8; plaintiffs, who are not sophisticated in the alarm business, "relied on the representations of the Defendant," *id.*, and "[t]he representations made by the Defendants were material and were false," *id.*; "[w]hen the Defendants made the representations the Defendant knew the representations were false or made recklessly, as a positive assertion and without knowledge of [their] truth," *id.*; and "Plaintiffs relied on the representation and the representation caused the Plaintiffs injury," *id.* ¶ 8.2. Similarly, to support their DTPA claim, plaintiffs allege that "Defendant represented that the commercial alarm system was sold and operated to with the express rule/understanding/agreement that it was for a[ ] jewelry store," *id.* ¶ 15; "Plaintiffs were [t]old the alarm system would be in a working condition or would be repaired timely because it was to protect individuals and inventory and items at" Niemax, *id.*; "[t]he representations by the Defendants were false, misleading, and deceptive in that the Defendants knew or should have known that the commercial alarm was not monitored and/or working and/or repaired," *id.*; and "Plaintiffs relied on[] these representations to each Plaintiff's detriment," *id.* Although plaintiffs allege various misrepresentations in support of their fraud and DTPA claims, they provide none of the other required particulars, such as when during the period from 1988 through the 2012 robbery the alleged misrepresentations

were made, who made the alleged misrepresentations, and in what context they were made.[8] *See Benchmark Elecs.*, 343 F.3d at 724. Because plaintiffs have failed to plead their fraud and DTPA claims with the required degree of specificity, the court grants ADT's motion to dismiss these claims.

D

Plaintiffs also appear to assert a DTPA claim based on the allegedly unconscionable conduct of ADT. *See* Tex Bus. & Com. Code § 17.50 (permitting a consumer to maintain an action where "any unconscionable action or course of action" constitutes a producing cause of economic damages or damages for mental anguish). This claim is not subject to the heightened pleading requirements of Rule 9(b).[9] Because ADT does not move to dismiss

---

[8]To the extent plaintiffs intend to base their fraud and DTPA claims on alleged misrepresentations contained in either the 1988 Contract or 1999 Contract, they must allege conduct that is fraudulent *independent of* these contracts. *See DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *6 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) ("[A] mere breach of contract, of course, is not of itself an act of fraud." (citations omitted)); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("[T]he usual view is that mere breach of contract is not fraud and that it may not be evidence of fraud." (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 252 (Tex. 1962))). In other words, plaintiffs cannot prevail on a DTPA or fraud claim based on ADT's failure to perform the promises it made in its contracts with Niemax.

[9]*See, e.g.*, *Bates v. Laminack*, 938 F.Supp.2d 649, 668 (S.D. Tex. 2013) ("Th[e] heightened pleading requirement [of Rule 9(b)] applies to claims that may be pled under other causes of action but which are based upon acts of fraud, such as certain DTPA claims." (citing *Lone Star Ladies Inv. Club*, 238 F.3d at 368)). In support of their DTPA claim, plaintiffs allege that ADT engaged in unconscionable conduct by "failing to have an alarm that would be in working condition or would be repaired timely because it was to protect individuals and inventory and items at the Plaintiffs['] jewelry store." Pet. ¶ 16. Plaintiffs do not rely on any allegations of fraud in support of their DTPA unconscionable conduct claim.

plaintiffs' DTPA claim on any basis other than Rule 9(b), the court denies the motion to dismiss plaintiffs' DTPA unconscionable conduct claim.[10]

IV

Finally, ADT maintains that the "Contract" limits plaintiffs' recoverable damages to $1,000. It argues that Texas courts routinely uphold and enforce limitation-of-damages provisions in alarm service contracts, and that the court should limit plaintiffs' recoverable damages to the "contractually agreed amount of $1000." D. Br. 9. In support, ADT cites the 1999 Contract, which provides, in pertinent part: "If ADT should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000, whichever is greater[.]" D. App. Ex. B.[11]

---

[10]Although the court is denying ADT's motion to dismiss plaintiffs' DTPA unconscionable conduct claim, it notes that, under the holding in *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex. 1996) (per curiam), "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Id.* at 14 (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983)); *see also Malsom v. Match.com, L.L.C.*, ___ Fed. Appx. ___, 2013 WL 5495666, at *2 (5th Cir. Oct. 3, 2012) (affirming dismissal of DTPA unconscionability claim where plaintiffs' claims amounted to allegations of breach of contract alone, thereby rendering DTPA inapplicable.). To prevail on a DTPA unconscionable conduct claim, plaintiffs must establish that it was ACE's *unconscionable conduct*, as opposed to ACE's breach of the 1988 or 1999 Contract, that caused their damages. *See Crawford*, 917 S.W.2d at 14-15 (holding that plaintiff could not maintain unconscionability claim under DTPA where the facts of the claim involved "nothing more than representations that the defendants would fulfill their contractual duty . . . and the breach of that duty sounds only in contract.").

[11]"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"

At the motion to dismiss stage, the court must decide whether plaintiffs have pleaded a plausible claim for relief. *See, e.g., Twombly*, 550 U.S. at 570. In support of their breach of contract claim, plaintiffs allege that they entered into an agreement with ADT "for the providing of top of the line UL rated commercial security alarm," and that ADT breached that agreement by "not having the alarm system working [or] repairing it in a timely manner." Pet. ¶ 6.1. Plaintiffs have plausibly pleaded a claim for breach of contract under *Twombly* and *Iqbal*. The court declines to hold that plaintiffs' recoverable damages are limited to $1,000. In moving to limit plaintiffs' recoverable damages to $1,000, ADT does not mention the 1988 Contract, which provides that "[i]f ADT should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 100% of the annual service charge [$1,584] or $10,000, whichever is less." D. App. Ex. A. Because both sums that appear to control under the 1988 Contract exceed $1,000, the court declines at this time to limit plaintiffs to that sum.[12]

V

Plaintiffs filed this case in state court, under the pleading standards that govern in that forum. They should be given an opportunity to replead under the federal pleading standards. *See, e.g., Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.)

---

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (internal citation omitted)).

[12]Under the 1999 Contract, however, 10% of plaintiffs' annual service charge ($117.60) would be less than the $1,000 limit.

(granting similar relief in removed case). Accordingly, the court grants plaintiffs 28 days from the date this memorandum opinion and order are filed to file an amended complaint.

\* \* \*

For the foregoing reasons, the court grants in part and denies in part the motion to dismiss, declines to hold that plaintiffs' recoverable damages are limited to $1,000, and grants plaintiffs leave to replead.

**SO ORDERED.**

December 11, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE