IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABRAHAM SHAKERI, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:13-CV-2852-D |
| VS. | § | |
| | § | |
| ADT SECURITY SERVICES, INC. | § | |
| d/b/a ADT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action seeking damages arising from the armed robbery of a jewelry

store, defendant Tyco Integrated Security LLC, f/k/a ADT Security Services, Inc. ("ADT")[1]

moves under Fed. R. Civ. P. 9(b) and 12(b)(6) to dismiss plaintiffs' claims for fraudulent

inducement and violation of the Texas Deceptive Trade Practices-Consumer Protection Act

("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and it seeks to limit

to $1,000 the amount of damages that can be recovered for breach of contract.  For the

reasons explained, the court denies ADT's Rule 9(b) motion, grants its Rule 12(b)(6) motion,

holds that the damages for breach of contract are capped at $1,000, and raises *sua sponte* that

ADT is entitled to dismissal of plaintiffs' separate claim for breach of the implied warranty

of good and workmanlike performance of services.

_____

[1]ADT Security Services, Inc. changed its name to Tyco Integrated Security LLC in
June 2012.  Because the name change occurred after the events giving rise to this litigation,
the court will refer to the defendant as ADT.

I

Plaintiffs Abraham Shakeri ("Shakeri") and Kahatereh Taji ("Taji") operate a jewelry store called Neimax Jewelry ("Neimax Jewelry").[2]  In 1988, shortly after the store opened, plaintiffs and the corporate entity Neimax Jewelry, Inc. ("Neimax") executed a contract ("1988 Contract") with ADT under which ADT agreed to install, monitor, and maintain an alarm system at Neimax Jewelry.  The Neimax Jewelry alarm system included constant monitoring by ADT and panic buttons for use in case of a robbery.  In 1999 Shakeri, as President of Neimax, executed a second contract ("1999 Contract") with ADT when ADT updated and replaced some of the alarm system's existing components.  Plaintiffs paid ADT for the alarm installation and for monthly alarm service.

On January 5, 2012 Shakeri contacted ADT to request a checkup of the Neimax Jewelry alarm system.  ADT sent out a technician on January 10, 2012.  The technician informed Shakeri that the repairs were complete.  But after the technician departed, Shakeri noticed a new beeping sound coming from the alarm.  He contacted ADT to report the problem.  The following day, ADT sent a technician to the store, but because he arrived at 5:00 p.m. and ADT had not authorized overtime, he departed without inspecting Neimax Jewelry's alarm.

On January 12, 2012 Neimax Jewelry was robbed.  During the robbery—in which

_____

[2]In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiffs' third amended complaint in the light most favorable to the plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Shakeri was severely beaten and tasered—Shakeri pushed the alarm system panic button multiple times, but the alarm did not respond.  The ADT technician arrived at Neimax Jewelry shortly after the robbery.  ADT alleges that the technician admitted to Shakeri that, at the time of the robbery, the alarm system was broken, and no monitoring was taking place.

Shakeri and Taji filed this lawsuit against ADT in state court, alleging claims for breach of contract, fraud, negligence, and violation of the DTPA.  After ADT removed the case to this court, it moved to dismiss plaintiffs' negligence, fraud, and DTPA claims, and to limit their damages for breach of contract to $1,000.  The court granted in part and denied in part ADT's motion to dismiss, declined to limit plaintiffs' contract damages to the sum of $1,000, and granted plaintiffs leave to file an amended complaint.  *Shakeri v. ADT Sec. Servs., Inc.*, 2013 WL 6498268, at *4 (N.D. Tex. Dec. 11, 2013) (Fitzwater, C.J.) ("*Shakeri I*").

Shakeri and Taji filed an amended complaint, and ADT moved anew to dismiss. Before briefing was complete, however, Neimax filed a motion to intervene as a party-plaintiff, and Shakeri and Taji sought leave to file a second amended complaint.  The court granted the motion to intervene, granted the motion for leave to file the second amended complaint, and denied without prejudice ADT's motion to dismiss.  Plaintiffs then filed their third amended complaint, in which they allege claims for breach of contract, violation of the DTPA, fraudulent inducement, and breach of implied warranty.[3]  ADT now moves to dismiss

---

[3]Shakeri and Taji attached to their motion for leave to file amended pleading a document entitled, "Second Amended Complaint."  After the court granted their motion for

plaintiffs' fraud-based DTPA claim and fraudulent inducement claim under Rule 9(b), moves to dismiss plaintiffs' DTPA, fraudulent inducement, and breach of contract claims brought by Shakeri and Taji under Rule 12(b)(6), and seeks to limit Neimax's recoverable contract damages to $1,000.  Plaintiffs oppose the motion.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]."  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted).  To survive ADT's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S.

---

leave to file amended pleading, however, plaintiffs filed a document entitled "Third Amended Complaint."  The court cannot discern any material differences between the second and third amended complaints.  And because ADT does not appear to object to plaintiffs' having filed the third amended complaint, the court will treat the third amended complaint as the operative pleading.

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678 (citation omitted).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud."  *Turner v. AmericaHomeKey Inc*., 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id*. (quoting *Benchmark Elecs*., 343 F.3d at 724) (internal quotation marks omitted).  More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud.  *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)).  Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required.  *Steiner v. Southmark Corp*., 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,

892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted).  "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs."  *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.).

## III

The court turns first to ADT's motion under Rule 9(b) to dismiss plaintiffs' fraudulent inducement claim and fraud-based DTPA claim.[4]

## A

ADT contends that plaintiffs have not pleaded their fraud-based claims with the particularity required by Rule 9(b) because they have failed to identify the individuals who made the alleged misrepresentations, failed to identify the time, location, and manner of the alleged misrepresentations, and failed to allege what misrepresentation was made.  Plaintiffs respond that they have pleaded the particulars of time, place, and content, the identity of the person working for ADT who made the misrepresentation, and what he obtained thereby.

---

[4]Plaintiffs' claim that ADT violated the DTPA through its unconscionable acts including "false[] advertising," 3d Am. Compl. ¶ 8.2, is subject to the pleading requirements of Rule 9(b).  *See, e.g., Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (stating that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *see also El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*, 1999 WL 354237, at *2 (N.D. Tex. 1999) (Fitzwater, J.) (holding that claims alleging violations of the DTPA are subject to Rule 9(b)'s requirements).

B

To support their DTPA claim based on unconscionable conduct, plaintiffs allege that ADT committed unconscionable acts "[s]uch as advertising alarm system of high quality monitoring and/or quality and timely monitoring and/or backup system being op[era]tional even if the main system failed."   3d Am. Compl. ¶ 8.1.   They assert that the "false advertising" was

> done by agents and/or salesm[e]n of Defendant.  One salesman at the beginning who did the acts is Richard [(]*last name* not known at this time) the other salesm[e]n at the renewals cannot be identified at this time.  Before signing the contract and before each renewal the unconscionable acts of Defendant include but are not limited to falsely advertising their alarms and service.

*Id.* ¶ 8.2.  Plaintiffs rely on these same allegations to support their fraudulent inducement claim.  They aver that ADT's

> agents/sales people in 1988 and at each renewal date through their agent/sales people (Richard _____, and others whose names are to be determined) made false representations of the fact that with a radio backup alarm and a standard alarm that there was no possibility of not having an alarm for Plaintiff's jewelry store business.

*Id.* ¶ 12.[5]

---

[5]*See also* 3d Am. Compl. ¶ 12 ("The Defendants through their agents/sales person[ne]l including Richard (*last name unknown*), in 1988, prior to signing the contract and at each renewal of the contract made false representations to Plaintiffs to enter into the contract for alarm and backup alarm services for a jewelry store alarm that was Underwriters Lab rated and would in having a backup never be without service.  All actions described herein were made prior to the contract and/or renewal(s) being entered.").

It is true that the third amended complaint lacks several factual details: such as the specific dates on which the alleged misrepresentations were made; the names (other than "Richard") of the ADT agents or salespeople who made the alleged misrepresentations; whether the statements were made to Shakeri, Taji, or some other individual; and the content and context of the alleged misrepresentations (other than the statement by "Richard" that the backup system would be operational if the main system failed). But plaintiffs have pleaded sufficient factual details to satisfy the requirements of Rule 9(b). The third amended complaint alleges that, in 1988, before the 1988 Contract was signed, an ADT employee named "Richard" represented to them that, if they purchased a radio backup alarm and a standard alarm, "there was no possibility of not having an alarm for Plaintiff's jewelry store business," *id.* ¶ 12. The third amended complaint is sufficient to allege who made the allegedly false representation ("Richard"), the contents of what he said (you will have an operational alarm for your jewelry store business if you purchase a standard alarm and a radio backup alarm), and what he obtained thereby (a contract for alarm services to be provided by his employer, i.e., a sale). Plaintiffs' pleading is sufficient to show that they are seeking to redress a specific wrong rather than merely an opportunity to search out an actionable wrong.

Accordingly, the court denies ADT's motion to dismiss plaintiffs' fraud-based claims under Rule 9(b).

IV

The court now turns to ADT's motion to dismiss plaintiffs' DTPA claim under Rule

12(b)(6).

A

The DTPA provides consumers a cause of action for false, misleading, or deceptive

acts or practices.  *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2011); *Amstadt v. U.S.*

*Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a
> consumer; (2) the defendant either engaged in false, misleading
> or deceptive acts (i.e., violated a specific laundry-list provision
> of the DTPA) or engaged in an unconscionable action or course
> of action; and (3) the DTPA laundry-list violation or
> unconscionable action was a producing cause of the plaintiff's
> injury.

*Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012)

(Fitzwater, C.J.) (citing *Amstadt*, 919 S.W.2d at 649).

Plaintiffs allege two separate bases for their DTPA claim: first, ADT engaged in

unconscionable conduct "outside of the contract," 3d Am. Compl. ¶ 8.1; and, second, ADT

breached the implied warranty of good and workmanlike performance of services, *id.* at

¶ 8.3.

B

1

In *Shakeri I* the court held that plaintiffs' DTPA unconscionable conduct claim, as

pleaded in the original state-court petition, was not subject to the heightened pleading

- 9 -

requirements of Rule 9(b).  *Shakeri I*, 2013 WL 6498268, at *4.  And because ADT did not move to dismiss this claim on any basis other than Rule 9(b), the court denied ADT's motion to dismiss this claim.  *Id.*  The court noted, however, that although it was denying ADT's motion to dismiss plaintiffs' DTPA unconscionable conduct claim,

> under the holding in *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex. 1996) (per curiam), "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."  To prevail on a DTPA unconscionable conduct claim, plaintiffs must establish that it was [ADT]'s *unconscionable conduct*, as opposed to [ADT]'s breach of the 1988 or 1999 Contract, that caused their damages.

*Id.* at *4 n.10 (some citations omitted).

In the third amended complaint, plaintiffs allege that "[t]he unconscionable conduct of Defendant was outside of the contract."  3d Am. Compl. ¶ 8.1.  They aver that

> [t]his claim is not for failure to perform the contract.  It is for unconscionable acts that Defendant did to get the Plaintiff to enter the Contract.  Such as advertising alarm system of high quality monitoring and/or quality and timely monitoring and/or the backup system being op[eratio]nal even if the main system failed.  This was all done by agents of Defendant to get the sale and thus profits.

*Id.*  ADT moves to dismiss the DTPA unconscionable conduct claim, contending that plaintiffs are alleging nothing more than a breach of contract.  Plaintiffs respond that they have specifically and deliberately pleaded the unconscionable acts of ADT.

2

"[I]t has long been the rule in Texas that mere nonfeasance under a contract creates

liability only for breach of contract." *Crawford*, 917 S.W.2d at 13; *accord Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). But courts "have struggled to clarify the boundary between contract claims and other causes of action." *Crawford*, 917 S.W.2d 13. The Supreme Court of Texas has explained that the relevant inquiry involves an examination of "both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Id.*

In *Malsom v. Match.com, L.L.C.*, 540 Fed. Appx. 412 (5th Cir. 2013), the Fifth Circuit summarized two Texas Supreme Court decisions that explain the difference between a permissible extracontractual claim and a claim that merely seeks to recover under the contract:

> In *Crawford*, a business owner sued a phonebook company for breach of contract, negligence, and unconscionable conduct under the DTPA when the phonebook company failed to run an advertisement for which the business owner had paid. [*Crawford*, 917 S.W.2d at] 12-13. The Texas Supreme Court held that the plaintiff could not maintain an unconscionability claim under the DTPA because the facts of the claim involved "nothing more than representations that the defendants would fulfill their contractual duty to publish, and the breach of that duty sounds only in contract." *Id.* at 14. The allegedly unconscionable statements themselves did not cause harm; it was the failure to print the advertisement promised, i.e., the breach of contract, that caused the damages claimed. *Id.* at 14-15. An allegation of a breach of contract, without more, does not amount to a false, misleading, or deceptive act under the DTPA. *Id.* at 14.
>
> By contrast, the Texas Supreme Court has held that an individual may maintain claims for both breach of contract and

> a violation of the DTPA when the plaintiff alleges not only a breach of contract, but also that the other party "never intended" to fulfill the contract in the first place. *Chapa*, 212 S.W.3d at 304. In *Chapa*, plaintiff claimed that a car dealership represented that she would receive one model of car "when in fact she was going to get another." *Id*. at 305. Recognizing that "[a] contractual promise made with no intention of performing may give rise to an action for fraudulent inducement," *id*. at 304, the Court allowed both claims to proceed, holding that "[w]hile failure to comply would violate only the contract, the initial misrepresentation violates the DTPA." *Id*. at 305.

*Id.* at 415 (footnote omitted).

In this case, as in *Crawford*, plaintiffs' unconscionable conduct claim amounts to allegations of breach of contract, thereby rendering the DTPA inapplicable. *See Malsom*, 540 Fed. Appx. at 415-16. Despite plaintiffs' conclusory assertion that ADT's unconscionable conduct "was outside of the contract," 3d. Am. Compl. ¶ 8.1, and that their DTPA claim "is not for failure to perform the contract," *id.*, it is clear that plaintiffs' alleged damages are the result of ADT's failure to fulfill its contractual obligations. Plaintiffs do not allege "an act or practice which [took] advantage of [their] lack of knowledge, ability, experience, or capacity . . . to a grossly unfair degree," Tex. Bus. & Com. Code Ann. § 17.45(5) (West 2011), and that "could have resulted in liability even in the absence of a contract between the parties," *Crawford*, 917 S.W.2d at 13. Their allegations are essentially these: (1) that ADT represented that the alarm system was of high quality, and that if the main alarm system failed, the radio backup system would be operational; and (2) that nonperformance of the alarm system means that ADT "falsely advertis[ed] [its] alarms and service." 3d. Am. Compl. ¶ 8.2. This alleged conduct amounts to a breach of contract claim

- 12 -

because the allegedly unconscionable conduct itself did not cause harm; it was the alleged failure of ADT to provide an operational alarm system, i.e., a breach of contract, that caused the damages claimed.

And the *Chapa* alternative—permitting a DTPA claim based on a contractual promise made with no intention of performing—is inapposite because nothing alleged in the third amended complaint permits the court to draw the reasonable inference that ADT had no intention of providing an operational alarm system for plaintiffs' jewelry store.  Plaintiffs allege that "[t]he Defendants['] agents/sales people knew it was false or that the opinion statement was reckless because of prior failures of both the primary alarm and backup alarms in other locations and other customers," 3d Am. Compl. ¶ 12, but they do not assert that ADT had no intention of performing its contractual obligations.

The court therefore concludes that this basis for the DTPA claim fails to state a claim on which relief can be granted because it merely alleges that ADT failed to fulfill its contractual obligations.

C

The court next considers whether plaintiffs have plausibly alleged that ADT violated the DTPA by breaching the implied warranty of good and workmanlike performance of services.[6]

---

[6]Plaintiffs allege a separate claim for breach of the implied warranty of good and workmanlike performance of services that ADT does not move to dismiss.  Because the court concludes that plaintiffs have not plausibly pleaded a breach of the implied warranty of good and workmanlike performance of services as a predicate for their DTPA claim, and because

1

In support of their DTPA claim based on ADT's alleged breach of the implied warranty to perform repairs in a good and workmanlike manner, plaintiffs assert the following:

> The Plaintiffs requested a repair on the alarm system and the Defendant came to Plaintiffs['] store front location and made repairs on the existing system. . . . The service consisted of repair and/or modification to the U.L. rated commercial alarm. The Defendant['s] agent . . . told Mr. Shakeri that the repairs were completed and that the U.L. rated commercial alarm was in good working order, which included a backup emergency alarm.  The repairs were made by technician/employees of the Defendant.  The alarm repairs were not made in a good and workmanlike manner.  The alarm and backup did not work, unknown to Plaintiffs until the robbery and beating of Mr. Shakeri the next day.

3d Am. Compl. ¶ 8.3.  ADT moves to dismiss this claim on the basis that plaintiffs do not allege how ADT failed to perform the services in a workmanlike manner, and that they instead allege only that the alarm and the backup did not work after ADT made repairs. Plaintiffs respond that the "Second Amended Complaint added a more artfully stated claim of breach of the implied warranty of good and workmanlike performance[] in the repair and/or modification of the alarm system under the DTPA and separately."  Ps. Br. 7.

---

plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services is based on the same allegations as is their DTPA claim, the court raises *sua sponte* that ADT is entitled to dismissal under Rule 12(b)(6) of plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services. As the court explains *infra* at § VII, it can raise this ground for dismissal *sua sponte*, provided it employs a fair procedure, such as permitting plaintiffs to file an opposition response before the court dismisses the claim.

2

"[A]n implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers suing under the DTPA." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987).  A good and workmanlike manner is "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Id*.  The Supreme Court of Texas has explained that "[w]e do not require repairmen to guarantee the *results* of their work; we only require those who repair or modify existing tangible goods or property to *perform* those services in a good and workmanlike manner." *Id.* at 355.

Although ¶ 8.3 of the third amended complaint contains several sentences, only one is pertinent when considering whether plaintiffs have stated a claim on which relief can be granted.  That single sentence makes this conclusory allegation: "[t]he alarm repairs were not made in a good and workmanlike manner."  3d Am. Compl. ¶ 8.3.  This allegation is insufficient to plausibly allege that the repair technician who serviced the alarm on January 10, 2012 did not actually perform the repairs in a good and workmanlike manner.  As the court notes above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  And although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Although plaintiffs are correct that expert testimony is not necessarily required to establish

their claim, they must at least allege facts that would enable the court to draw the reasonable inference that the ADT repair technician did not perform the alarm repairs in a manner generally considered proficient by those capable of judging such work. Because they have failed to do so, the court dismisses their DTPA claim based on the implied warranty to repair in a good and workmanlike manner.[7]  The court raises *sua sponte* that ADT is entitled to dismissal of plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services.  *See supra* note 6 and *infra* § VII.

V

The court now considers plaintiffs' fraudulent inducement claim.

A

To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as "an underlying contract which was induced."  *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2011)).

B

In support of their fraudulent inducement claim, plaintiffs allege:

> The Defendants through their agents/sales person[ne]l including Richard (*last name unknown*), in 1988, prior to signing the contract and at each renewal of the contract made false representations to Plaintiffs to enter into the contract for alarm

---

[7]Because the court is dismissing plaintiffs' DTPA claim for the reasons explained, it does not consider ADT's argument that Shakeri and Taji do not qualify as "consumers" under the DTPA.

> and backup alarm services for a jewelry store alarm that was Underwriters Lab rated and would in having a backup never be without service.  All actions described herein were made prior to the contract and/or renewal(s) being entered.

3d Am. Compl. ¶ 12.  Defendants maintain that the merger clause in the 1999 Contract negates plaintiffs' fraudulent inducement claim.  Plaintiffs do not respond to this argument.

## C

Plaintiffs have failed to state a plausible claim for fraudulent inducement based on representations made by ADT's agents and salespersons prior to their signing the 1988 and 1999 Contracts, because plaintiffs disclaimed reliance on any such representations.  Under Texas law, "[p]ure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, have never had the effect of precluding claims for fraudulent inducement."  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011).  But a "release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).[8]

---

[8]In *Italian Cowboy* the court held that the plaintiffs could maintain a fraudulent inducement claim where the alleged release did not speak of reliance.  *Italian Cowboy*, 341 S.W.3d at 336.  This was in contrast to *Schlumberger* and *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008), where the plaintiffs disclaimed reliance through provisions expressly stating that they did not "rely" on any of the defendant's statements.  In fact, in comparing the language of the alleged disclaimers in each of the three cases—*Schlumberger*, *Forest Oil*, and *Italian Cowboy*—the *Italian Cowboy* court italicized the word "relying" in the provisions from *Schlumberger* and *Forest Oil* and noted the absence of the term "relying" from the provision at issue in *Italian Cowboy*.  *Italian Cowboy*, 341 S.W.3d at 336.

The language in the 1999 Contract, which ADT has attached to its motion to dismiss,[9] is very similar to that of *Schlumberger* and *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008).  It states:

> In executing this agreement, customer *is not relying on* any advice or advertisement of ADT.  Customer agrees that any representations, promise, condition, inducement or warranty, express or implied, not included in writing in this agreement shall not be binding upon any party, and that the terms and conditions hereof apply as printed without alteration or qualification, except as specifically modified in writing.

D. App. Ex. A (upper case font omitted; emphasis added).  The language in the 1988 Contract is identical.  *See* D. 7/29/13 App. Ex. A.  This provision explicitly disclaims reliance, thereby precluding plaintiffs' fraudulent inducement claim.

Accordingly, the court dismisses plaintiffs' fraudulent inducement claim under Rule 12(b)(6) for failure to state a claim on which relief can be granted.[10]

---

[9]The court can consider documents attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

[10]The court also holds that Shakeri and Taji have failed to plausibly plead a claim for fraudulent inducement because they have not pleaded that they were parties to the 1988 or 1999 Contracts.  As explained above, to state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as "an underlying contract which was induced."  *McData*, 646 F.3d at 325 (citing *Haase*, 62 S.W.3d at 798).  Because, as the court explains below, plaintiffs have not plausibly alleged that either Shakeri or Taji entered into a contract with ADT, neither Shakeri nor Taji can recover for fraudulent inducement as a matter of law.

VI

The court now considers plaintiffs' breach of contract claim.

A

ADT moves to dismiss the breach of contract claim brought by Shakeri and Taji, contending that because plaintiffs have not alleged that Shakeri and Taji are parties to the 1999 Contract—which it maintains controls—Shakeri and Taji lack "standing" to assert a breach of contract claim against ADT.  Plaintiffs respond that because Shakeri signed the 1999 Contract, Shakeri and Taji have standing to sue.

B

At the outset, the court notes that the references in the briefing to "standing" can more precisely be viewed as references to "capacity."  Although ADT and several Texas opinions refer to the issue of privity as one of "standing," under Texas law "a challenge to a party's privity of contract is a challenge to capacity, not standing."  *Transcontinental Realty Investors, Inc. v. Wicks*, ___ S.W.3d ___, 2014 WL 3827901, at *2 (Tex. App. Aug. 5, 2014, no pet.) (citing *Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 129 (Tex. App. 2014, no pet.)).  Even so, because the briefing and several Texas decisions use the term "standing," the court will do so as well.

Under Texas law, the general rule is that only parties to a contract have the right to complain of a breach thereof, "with the exception that a nonparty who proves the contract was made for his benefit, and that the contracting parties intended he benefit from the contract, may bring an action on the contract as a third party beneficiary."  *Prize Energy Res.,*

- 19 -

*L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 551 (Tex. App. 2011, no pet.) (citing cases); *see also Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App. 2008, no pet.).   Accordingly, to recover for breach of contract, "the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary entitled to enforce the contract."   *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App. 2010, no pet.) (citing *O.A.I.C. Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App. 2007, pet. denied)). "Privity of contract is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff." *Id.*

Plaintiffs contend that Shakeri and Taji have standing to sue for breach of the 1999 Contract because Shakeri signed it, and the law confers standing on the signatory and his spouse, in this instance, Shakeri's wife Taji.   But under Texas law, "[t]he signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract."   *Star Supply Co. v. Jones*, 665 S.W.2d 194, 198 (Tex. App. 1984, no writ); *see also Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App. 2006, pet. denied) ("Where a corporation enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract." (citation omitted)).   The 1999 Contract is entitled "Commercial Sales Proposal/Agreement," is addressed to "Neimax Jewelry" as the "Customer," and is signed by Shakeri as "president."   D. Br. Ex. A.   The court holds that Shakeri's signature on the 1999 Contract—which is clearly a corporate contract designating

"Neimax Jewelry" as the "customer"—is alone insufficient to plausibly allege that Shakeri was a party, individually, to the 1999 Contract. Absent a basis to plausibly infer that Shakeri was a party in his individual capacity, Taji cannot establish standing derivatively as Shakeri's wife (even assuming *arguendo* that such standing is available as a matter of law).

Accordingly, because plaintiffs have failed to plausibly allege that Shakeri or Taji was a party to, or a third-party beneficiary of, the 1999 Contract, the court grants ADT's motion to dismiss Shakeri and Taji's breach of contract claim.

## C

ADT next seeks to limit Neimax's recoverable damages on its breach of contract claim to $1,000. Under the 1999 Contract, the parties agreed as follows:

> If ADT should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000, whichever is greater, as the agreed upon damages and not as a penalty, as the exclusive remedy.

D. App. Ex. A (upper case font omitted).

ADT contends that the merger and integration clause makes clear that the 1999 Contract constitutes the entire agreement and therefore supersedes the 1988 Contract. It also maintains that Texas courts routinely uphold and enforce limitation-of-damages provisions in alarm service contracts. Plaintiffs do not respond to this argument.

## D

In *Shakeri I* the court declined to hold that plaintiffs' recoverable damages are capped at $1,000 because ADT failed to mention the 1988 Contract in its motion to dismiss, and the

- 21 -

1988 Contract provided a limit of liability *greater* than $1,000.  *Shakeri I*, 2013 WL

6498269, at *4.  In ADT's present motion to dismiss, however, it contends that only the 1999

Contract controls by virtue of the merger and integration clause in that contract, which

provides:

> This agreement constitutes the entire agreement between the customer and ADT. . . . The terms and conditions of this agreement shall govern notwithstanding any inconsistent or additional terms and conditions or any purchase order or other document submitted by the customer.

D. App. Ex. A.

The merger and integration clause of the 1999 Contract provides that the contract is

"the entire agreement between the customer and ADT," which indicates that "the contract

was a completely integrated agreement and not one of multiple agreements addressing

multiple aspects of a transaction or the relationship between the parties."  *Fazio v.*

*Cypress/Gr. Hous. I, L.P.*, 403 S.W.3d 390, 402 (Tex. App. 2013, pet. denied); *see also*

*Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 448-49 (Tex. App.

2002, pet. denied) ("A merger occurs when the same parties to an earlier agreement later

enter into a written integrated agreement covering the same subject matter." (citation

omitted)).  Accordingly, the court holds that the 1999 Contract controls.

"Texas courts have repeatedly upheld liability limiting clauses in alarm contracts."

*Kim v. Stanley Convergent Sec. Solutions, Inc.*, 2013 WL 1715789, at *2 (N.D. Tex. Apr. 19,

2013) (Lynn, J.) (citing *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 589 (Tex. Civ. App.

1980, no writ); *Schepps v. Am. Dist. Tel. Co. of Tex.*, 286 S.W.2d 684, 690 (Tex. Civ. App.

- 22 -

1955, no writ)).  In *Vallance* a Texas court of appeals enforced a limitation of damages

provision in an alarm service contract, explaining:

> When a burglar alarm company undertakes to provide protective
> services under terms limiting its liability for the ineffectiveness
> of the performance of those services, no public policy is
> violated.  On the contrary, there is a sound policy reason
> compelling the enforcement of these provisions. [The customer]
> paid a service charge of $24.50 per month to [the alarm
> company].  It would be unreasonable "to expect [the alarm
> company] to assume the responsibilities arising under a burglary
> insurance policy upon payment of . . . " this nominal fee.  Had
> [the customer] desired greater protection against loss from
> burglary he could have purchased burglary insurance or paid
> additional amounts under a graduated scale of rates, as provided
> in the agreement.

*Vallance*, 595 SW.2d at 590 (citations omitted).  In *Arthur's Garage, Inc. v. Racal-Chubb*

*Security Systems, Inc.*, 997 S.W.2d 803 (Tex. App. 1999, no pet.), the court reached a similar

conclusion, holding that a provision in an alarm installation contract limiting the company's

potential liability to $350 was a liquidated damages provision, that such provisions were

valid unless they violated public policy, and that the provision at issue did not violate public

policy.  *Arthur's Garage*, 997 S.W.2d at 810-11; *see also Kim*, 2013 WL 1715789, at *2

(enforcing limitation of liability in alarm service contract).

   Like the contractual provisions at issue in *Vallance*, *Arthur's Garage*, and *Kim*, the

limitation-of-damages provision in the 1999 Contract establishes an enforceable limit on

liability.  "*Vallance* and *Arthur's Garage* unequivocally establish that such provisions are

presumptively valid and supported by public policy."  *Kim*, 2013 WL 1715789, at *2.  As in

*Kim*, plaintiffs have pleaded no facts that would enable the court to draw the reasonable

- 23 -

inference that they have rebutted this presumption. *See id.* The court therefore concludes that the 1999 Contract contains a valid limitation clause, and that Neimax's breach of contract claim should be limited accordingly.

The court therefore grants ADT's motion and holds that Neimax's recoverable damages under the 1999 Contract are limited to the sum of $1,000.

## VII

The court has raised one ground for dismissal *sua sponte*: that plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services should be dismissed. *See supra* note 6. This is permissible, provided the court does so under procedures that are fair. *See Coates v. Heartland Wireless Commnc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.); *Foreman v. Dallas County, Tex.*, 990 F. Supp. 505, 510 (N.D. Tex. 1998) (Fitzwater, J.) (three-judge court). "Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 409 (3d ed. 2004). To ensure that this procedure is fair to plaintiffs, the court grants them 21 days from the date of this memorandum opinion and order to file a brief that sets out their opposition to dismissing this claim on the basis that the court has set forth.

- 24 -

\*   \*   \*

For the foregoing reasons, the court denies ADT's Rule 9(b) motion, grants its Rule 12(b)(6) motion, holds that Neimax's recoverable damages for breach of contract are capped at $1,000, and raises *sua sponte* that ADT is entitled to dismissal of plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services.

**SO ORDERED.**

November 6, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE