IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ABRAHAM SHAKERI, et al.,           §
                                   §
                    Plaintiffs,    §
                                   §  Civil Action No. 3:13-CV-2852-D
VS.                                §
                                   §
ADT SECURITY SERVICES, INC.        §
d/b/a ADT,                         §
                                   §
                    Defendant.     §

MEMORANDUM OPINION
AND ORDER

Defendant Tyco Integrated Security LLC, f/k/a ADT Security Services, Inc. ("ADT")[1]

moves to dismiss plaintiffs' fourth amended complaint on the basis of an exculpatory

provision in a contract to which the Fifth Circuit has held plaintiffs are bound.  For the

reasons that follow, the court denies the motion.

I

Because this case is the subject of two prior memorandum opinions of this court and

an opinion of the Fifth Circuit, *see Shakeri v. ADT Security Services, Inc.*, 816 F.3d 283 (5th

Cir. 2016) ("*Shakeri III*"); *Shakeri v. ADT Security Services, Inc.*, 2014 WL 5780955 (N.D.

Tex. Nov. 6, 2014) (Fitzwater, C.J.) ("*Shakeri II*"); *and Shakeri v. ADT Security Services,*

*Inc.*, 2013 WL 6498268 (N.D. Tex. Dec. 11, 2013) (Fitzwater, C.J.) ("*Shakeri I*"), the court

_____

[1]ADT Security Services, Inc. changed its name to Tyco Integrated Security LLC in
June 2012.  Because the name change occurred after the events giving rise to this litigation,
the court will refer to the defendant as ADT.

will limit its discussion of the background facts and procedural history to what is pertinent

to this decision.

In 1988 plaintiffs Abraham Shakeri ("Shakeri") and Kahatereh Taji ("Taji"),

proprietors of a jewelry store called Neimax Jewelry("Neimax"), entered into a contract with

ADT pursuant to which ADT agreed to install, monitor, and maintain an alarm system with

a backup alarm at Neimax.[2]  On August 26, 1999 Shakeri, acting as President of Neimax,

executed a second contract with ADT ("1999 Contract") under which ADT updated and

replaced some of the alarm system's existing components.  The 1999 Contract purports to

limit ADT's liability, providing, in pertinent part:

> ADT SHALL IN NO EVENT BE LIABLE FOR ANY
> CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY
> NATURE, INCLUDING WITHOUT LIMITATION,
> DAMAGES FOR PERSONAL INJURY OR DAMAGES TO
> PROPERTY AND HOWEVER OCCASIONED, WHETHER
> ALLEGED AS RESULTING FROM BREACH OF
> WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE
> OF ADT OR OTHERWISE.

D. App. 2 (bold font omitted).  The contract also provides:

---

[2]In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiffs' fourth amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES.   CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. . . . THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT , ITS AGENTS OR EMPLOYEES.

*Id.*

On January 12, 2012 Neimax was robbed.  During the robbery, Shakeri pushed the panic button on his alarm system multiple times, but the alarm did not respond.  Shakeri was severely beaten and tasered.  Shakeri alleges that ADT has admitted that, at the time of the robbery, the alarm system was broken and no monitoring was taking place.

Shakeri and Taji sued ADT in state court alleging claims for breach of contract, fraud, negligence, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2016).  After removing the case to this court, ADT moved, *inter alia*, to dismiss plaintiffs' negligence claim on the basis that there is no common law duty to install, monitor, and repair an alarm system, and, to the extent ADT was contractually obligated to install, monitor, and repair Neimax's alarm system and breached this contractual obligation, plaintiffs' only remedy was to sue for breach of contract.[3]  The court granted ADT's motion to dismiss plaintiffs' negligence claim, holding that

> plaintiffs have not demonstrated that in Texas there is a common law duty to provide an operating top of the line commercial alarm.  As the petition is now pleaded, if ADT had such an obligation, it arose by contract.  Accordingly, because plaintiffs have not plausibly pleaded a "violation of a duty imposed by law independent of the contract," the court grants ADT's motion to dismiss their negligence claim.

---

[3]ADT also moved to dismiss plaintiffs' fraud and DTPA claims and to limit its damages for breach of contract to $1,000.  The court granted in part and denied in part ADT's motion to dismiss, declined to limit plaintiffs' contract damages to the sum of $1,000, and granted plaintiffs leave to file an amended complaint.  *Shakeri I*, 2013 WL 6498268, at *4.

*Shakeri I*, 2013 WL 6498268, at \*2 (citations omitted).

As permitted by *Shakeri I*, plaintiffs filed an amended complaint, which they later amended a second and third time. In their third amended complaint, plaintiffs alleged claims for breach of contract, violation of the DTPA, fraudulent inducement, and breach of implied warranty. ADT moved to dismiss plaintiffs' claims under Rules 9(b) and 12(b)(6) and again sought to limit Neimax's recoverable contract damages to $1,000. The court granted ADT's Rule 12(b)(6) motion, held that Neimax's recoverable damages for breach of contract are capped at $1,000, and raised, *sua sponte* that ADT was entitled to dismissal of plaintiffs' separate claim for breach of the implied warranty of good and workmanlike performance of services. *See Shakeri II*, 2014 WL 5780955, at \*11. Plaintiffs then moved for an agreed judgment against ADT in the amount of $1,000 on their remaining breach of contract claim, and the court granted the motion. Plaintiffs appealed.

On appeal, plaintiffs argued that this court had erred in dismissing their claims for common law negligence, breach of implied warranty of good and workmanlike performance under the common law and the DTPA, unconscionable conduct under the DTPA, and common law fraudulent inducement. *See Shakeri III*, 816 F.3d at 291. The Fifth Circuit held at the outset that, despite plaintiffs' argument to the contrary, they were bound by the terms of the 1999 Contract. *Id.* The panel then held that this court had erred for two reasons in dismissing plaintiffs' negligence claim. First, the Texas case on which the court in *Shakeri I* relied—*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 446 S.W.3d 29 (Tex. App. 2013, pet. granted), *rev'd*, 445 S.W.3d 716 (Tex. 2014)—was overruled by the Supreme

Court of Texas after the court decided *Shakeri I*.  The Fifth Circuit held that that decision

made clear that "[p]laintiffs should not be faulted for failing to specifically demonstrate that

a common law duty to provide an operating top of the line commercial alarm exists in Texas

because such duties may be implied by the relationship between the parties." *Shakeri III*, 816

F.3d at 293.  Second, the Fifth Circuit explained that the economic loss rule did not preclude

plaintiffs' negligence claim because

> [w]hile Plaintiffs assert a duty that sounds similar to the one
> covered by the contract, the nature of Plaintiffs' injury is non-
> economic.  Plaintiff Shakeri alleged that he suffered severe and
> permanent physical injuries when Neimax was robbed on
> January 12, 2012.  Plaintiff Shakeri's injury is therefore the kind
> of "physical harm" that is not covered by the economic loss rule
> and is not defeated by the existence of a contract between the
> parties.

*Id.*  The panel reversed this court's judgment dismissing plaintiffs' negligence claim and

remanded for further proceedings on this claim.[4]

On remand, plaintiffs filed a fourth amended complaint in which they assert a single

claim for "all the negligence approved actions by the Fifth Circuit."  4th Am. Compl. 6.

ADT moves to dismiss on the basis that the 1999 Contract bars plaintiffs' negligence claim,

or, in the alternative, that it limits plaintiffs' recoverable damages to the sum of $1,000.

Plaintiffs oppose ADT's motion.

---

[4]The panel affirmed this court's orders dismissing plaintiffs' remaining tort claims.
*Shakeri III*, 816 F.3d at 296.

II

A

ADT moves to dismiss plaintiffs' negligence claim, contending that, under the clear

terms of the 1999 Contract,

> Plaintiffs agreed that ADT would not be liable for consequential
> or incidental damages of any nature, including damages for
> personal injury, that ADT was exempt from liability for
> negligence related to the services it provided under the Contract,
> that Plaintiffs would look solely to their insurance company to
> recover for any injuries or losses and that Plaintiffs' recoverable
> damages for any liability on the part of ADT would be limited
> to $1000.

D. Br. 4.  It contends that in the alarm services context, Texas courts routinely uphold

limitation of liability provisions identical to the one in the 1999 Contract against claims for

negligence and gross negligence; that outside of the alarm services context, the 1999

Contract's limitation of liability provision satisfies Texas's requirements for the enforcement

of contractual pre-injury releases; and, alternatively, plaintiffs' recoverable damages are

limited by the 1999 Contract's limitation of damages provision.

Plaintiffs respond that the issues ADT raises in its motion to dismiss "were all

addressed by the Court of Appeals in [its] opinion and [ADT] lost."  P. Br. 1.  They argue

that ADT, in its motion, is "trying go to around the Court of Appeals['] findings and ruling,"

that ADT's motion is "frivolous," and that they have "stated their claim with particular facts

supporting each element."  *Id.* at 2.  Plaintiffs do not specifically respond to ADT's argument

that the 1999 Contract's limitation of liability provision bars their negligence claim or that

the 1999 Contract limits their recoverable damages to the sum of $1,000.

B

ADT's contention that the exculpatory clause in the 1999 Contract relieves it from liability is an affirmative defense on which ADT will have the burden of proof at trial. *See Rowlett v. McMillan*, 574 S.W.2d 625, 627 (Tex. App. 1978, writ ref'd n.r.e.) (holding that exculpatory clause "is an affirmative defense which under [Tex. R. Civ. P. 94], is required to be affirmatively pled."). "'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). Stated another way, ADT is not entitled to dismissal under Rule 12(b)(6) unless plaintiffs "ha[ve] pleaded [themselves] out of court by admitting to all of the elements of the defense." *Cochran*, 2011 WL 5604024, at *1 (quoting *Sivertson*, 2011 WL 4100958, at *3).

Under Texas law, "[a]greements exempting a party from future liability for negligence are generally recognized as valid and effective except where, because of the relationship of the parties, the exculpatory provision is contrary to public policy or the public interest." *Crowell v. Hous. Auth. of City of Dall.*, 495 S.W.2d 887, 889 (Tex. 1973). "If the contract

is between private persons who bargain from positions of substantially equal strength, the agreement is ordinarily enforced by the courts." *Id.* "The exculpatory agreement will be declared void, however, where one party is at such disadvantage in bargaining power that he is practically compelled to submit to the stipulation." *Id.* "In determining whether a limitation of liability clause is unconscionable or against public policy, courts generally consider the entire atmosphere in which the agreement was made, the bargaining process the parties went through, and whether there is such a disparity in bargaining power between the parties that one party is forced to agree to the exculpatory provision." *Mireles v. Tejas Appraisal & Inspection Co.*, 2007 WL 1826074, at \*1 (Tex. App. 2007, no pet.) (memorandum opinion) (citing *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex. App. 2005, no pet.); *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App. 1996, no writ)).

C

The court holds that ADT is not entitled to a dismissal at the Rule 12(b)(6) stage of plaintiffs' negligence claim based on the affirmative defense that the exculpatory provisions in the 1999 Contract bar this claim. Although plaintiffs neither plead nor argue that the exculpatory provisions of the 1999 Contract are unenforceable because they violate public policy, the court cannot conclude, based only on the allegations of the fourth amended complaint, that they do not. The only allegations in the fourth amended complaint that refer to the 1999 Contract are plaintiffs' assertion that "[t]he alarm system and backup alarm was contracted and paid for by Neimax since 1987 the opening of the jewelry store," 4th Am.

Compl. 1, and plaintiffs' quotation from *Shakeri III*, in which the panel stated that "[o]n August 26, 1999, Shakeri, acting as President of Neimax executed a second contract with ADT (1999 Contract) under which ADT updated and replaced some of the alarm system's existing components," *id.* at 3 (quoting *Shakeri III*, 816 F.3d at 287-88), and cited various provisions from the 1999 Contract. These allegations do not admit that the 1999 Contract was enforceable or that there was *not* a disparity of bargaining power between the parties in entering into the 1999 Contract. Although the court does not suggest that ADT cannot prevail on summary judgment or at trial based on the exculpatory provisions in the 1999 Contract, it concludes that plaintiffs' negligence claim cannot be dismissed at the Rule 12(b)(6) stage. This is because plaintiffs have not pleaded themselves out of court by admitting all of the elements of this affirmative defense. Accordingly, the court declines to grant ADT's motion to dismiss plaintiffs' negligence claim based on the affirmative defense that the exculpatory provisions in the 1999 Contract bar plaintiffs' claim.

To the extent plaintiffs contend that the Fifth Circuit considered and rejected the arguments ADT is raising in its motion to dismiss, they are mistaken. Although in *Shakeri III* the panel stated that "the district court erred when it suggested that, in any event, Plaintiff's negligence claim would be covered by the 1999 Contract," and that "Plaintiff Shakeri's injury is therefore the kind of 'physical harm' that is not covered by the economic loss rule and is not defeated by the existence of a contract between the parties," *Shakeri III*, 816 F.3d at 293, it made these statements in the context of its discussion of the economic loss rule. The panel never addressed—because it was not raised before the panel—ADT's

affirmative defense that plaintiffs' negligence claim is barred by the limitation of liability

provisions in the 1999 Contract.

III

The court likewise denies ADT's alternative request to limit plaintiffs' recoverable

damages to the sum of $1,000.  To be sure, "Texas courts have repeatedly upheld liability

limiting clauses in alarm contracts."  *Kim v. Stanley Convergent Sec. Solutions, Inc.*, 2013

WL 1715789, at *2 (N.D. Tex. Apr. 19, 2013) (Lynn, J.) (citing *Vallance & Co. v. DeAnda*,

595 S.W.2d 587, 589 (Tex. Civ. App. 1980, no writ); *Schepps v. Am. Dist. Tel. Co. of Tex.*,

286 S.W.2d 684, 690 (Tex. Civ. App. 1955, no writ)).  But such clauses are also subject to

the requirement that they not violate public policy.  *See Arthur's Garage, Inc. v. Racal-*

*Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App. 1999, no pet.) (holding, in context

of summary judgment motion, that agreement to limit liability in alarm service contract was

enforceable where plaintiff "has not asserted any disparity in the bargaining power between

the parties . . . [and] the alarm contract provides [plaintiff] could have obtained greater

protection against losses by paying an additional amount commensurate with the level of

protection desired.").  As with exculpatory clauses, an agreement to limit liability "will not

violate public policy if there is no disparity in bargaining power between the parties."  *Fox*

*Elec. Co. v. Tone Guard Sec., Inc.*, 861 S.W.2d 79, 83 (Tex. App. 1993, no pet.).  As the

court has already explained, plaintiffs have not pleaded facts in their fourth amended

complaint that would enable the court to conclude, from the face of the pleading, that the

limitation-of-liability provision in the 1999 Contract is enforceable (i.e., does not violate

public policy).   Accordingly, the court declines to grant ADT's alternative request that it limit plaintiffs' recoverable damages to the sum of $1,000.

The court recognizes that, in *Shakeri II*, the court held that plaintiffs' recoverable contract damages *were* limited to the sum of $1,000.  In reaching this conclusion, the court followed the approach taken in *Kim*, in which the court held:

> *Vallance* and *Arthur's Garage* unequivocally establish that such provisions are presumptively valid and supported by public policy. Plaintiff has pled no facts that might rebut that presumption, and the Court declines to infer any.  *See Posey v. Sw. Bell Yellow Pages, Inc*., 878 S.W.2d 275 (Tex. App.— Corpus Christi 1994, no writ) ("An allegation that a provision in a contract is void, unenforceable or unconscionable is a matter of avoidance which must be pled.").

*Kim*, 2013 WL 1715789, at \*2.  But in *Shakeri II* and *Kim*, the court was addressing whether a limitation-of-liability provision in a contract limited the amount of damages that the plaintiff could recover on a *breach of contract* claim.  Under Texas law, "[a]n allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded."  *950 Corbindale, L.P. v. Kotts Cap. Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App. 2010, no pet.).  In the context of plaintiffs' *negligence* claim, however, there is no apparent reason for plaintiffs to have affirmatively pleaded the unenforceability of any provision in the 1999 Contract. Accordingly, the court cannot conclude at the Rule 12(b)(6) stage, based only on the allegations of plaintiffs' fourth amended complaint, as it did in *Shakeri II*, that the limitation-of-liability provision limits plaintiffs' recoverable damages to the sum of $1,000.

* * *

Accordingly, for the reasons explained, the court denies ADT's motion to dismiss.

**SO ORDERED**.

November 4, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE